UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOANN WAINWRIGHT, individually, and on behalf of other members of the public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MELALEUCA, INC., an Idaho corporation,<br><br>Defendants. | No. 2:19-cv-02330-JAM-DB<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS ACTION** |

Joann Wainwright filed a putative class action against Melaleuca, Inc. in Sacramento County Superior Court. Exh. C to Notice of Removal ("Compl."), ECF No. 1-5. Her eight-count complaint alleged Melaleuca violated various provisions of the California Labor Code. Id. Melaleuca timely removed the case to federal court. Notice of Removal, ECF No. 1. It then filed a motion to compel arbitration and either dismiss or stay the underlying suit. ECF No. 9. Wainwright opposed the motion, ECF No. 23, and Melaleuca filed a reply, ECF No. 23.[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for January 14, 2020.

1

Wainwright and Melaleuca's contract squarely prevents the Court from determining whether Wainwright's claims are arbitrable. The enforceable delegation clause contained therein reserves that question for the arbitrator. For this reason and those discussed below, the Court GRANTS Melaleuca's motion to compel arbitration. The Court also GRANTS Melaleuca's motion to dismiss this action. The dismissal is without prejudice and Wainwright may refile in the proper forum if the arbitrator finds her claims are not arbitrable.

## I. BACKGROUND

Wainwright is a California resident. In 2019, she created an online account with Melaleuca and registered to work as an Independent Marketing Executive for the company. Compl. ¶ 16; Mot. at 2. In completing her registration, Wainwright clicked a box that indicated she "agree[d] to and acknowledge[d] that [she] read the terms & conditions outlined in the Independent Marketing Executive Agreement, Statement of Policies[,] and Compensation Plan." Mot. at 2-3 (citing Martineau Decl. ¶ 20, ECF No. 9-4; Exh. G to Martineau Decl.). Wainwright stopped working for Melaleuca six months later. Compl. ¶ 16. She contends Melaleuca misclassified her as an independent contractor and, consequently, deprived her of several benefits employees are promised under the California Labor Code. Compl. ¶ 18.

## II. OPINION

A. <u>Legal Standard</u>

Under the Federal Arbitration Act, an arbitration agreement

contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section two of the FAA "thereby places arbitration agreements on equal footing with other contracts." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 68 (2010). Absent a meritorious challenge to the validity of an agreement to arbitrate, "courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 529 (2019).

Within an arbitration agreement, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway questions of arbitrability.'" Henry Schein, Inc., 139 S. Ct. at 529. Common arbitrability questions include "whether the parties have agreed to arbitration [and] whether their agreement covers a particular controversy." Id. When an arbitration clause purports to delegate questions of arbitrability to an arbitrator, it must do so "clearly and unmistakably." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). A contracting party may challenge the enforceability of a delegation clause by arguing the delegation is not "clear and unmistakable" or by raising a state law defense to contract formation. See Rent-A-Center, West, Inc., 561 U.S. at 71 (explaining that "to immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract.").

///

3

B. *Analysis*

Melaleuca argues the parties entered into a valid arbitration agreement when Wainwright enrolled as an Independent Marketing Executive for the company. Mot at 2-4. It further contends the arbitration agreement contains an enforceable delegation clause that prevents the Court from adjudicating the question of whether Wainwright's claims fall within the arbitration agreement's reach. Id. at 6-7. Wainwright disagrees. She argues this Court must determine whether her claims are arbitrable because the agreement's delegation clause is unenforceable. Opp'n at 3-6. Specifically, Wainwright maintains the delegation clause did not "clearly and unmistakably" delegate the question of arbitrability to an arbitrator and that the delegation clause is unconscionable. Opp'n at 2-6. The Court is not persuaded by either defense.

1. *Applicable Law*

Before the Court can address the merits of Wainwright's defenses, it must determine what law applies to each analysis. The parties do not dispute that the "clear and unmistakable" standard is born out of the Supreme Court's interpretation of the FAA. See AT&T Tech., Inc. v. Comm'n Workers of America, 475 U.S. 643, 649 (1986) (collecting cases). Because this defense is a product of federal law, federal courts' interpretations of this statute rule the day. Specifically, this Court is bound by decisions of the Ninth Circuit and Supreme Court. See Hart v. Massanari, 266 F.3d 1155, 1171-72 (9th Cir. 2001).

Wainwright and Melaleuca do, however, dispute what law applies to this Court's unconscionability analysis. Melaleuca

argues the Idaho choice-of-law clause contained in the
Independent Marketing Executive Agreement ("IMEA") serves as the
beginning and end of the analysis, i.e., Idaho law applies.
Mot. at 8; Reply at 2 n.1. Wainwright, on the other hand,
contends the Court cannot give the choice-of-law clause effect
because it would "violate a strong California public policy or
result in an evasion of a statute of the forum protecting its
citizens." Opp'n. at 9 (quoting Hall v. Superior Court, 150
Cal. App. 3d 411, 416-17 (1983)). Absent an enforceable choice-of-law clause, she asserts, this Court should apply the law of
the forum. See id. at 4.

  Both California and Idaho adopt the approach set forth in
the Second Restatement of Conflict of Laws to determine whether
a choice-of-law clause is enforceable. See Nedlloyd Lines B.V.
v. Superior Court, 3 Cal. 4th 459, 464-465 (1992); Carroll v.
MBNA America Bank, 148 Idaho 261, 265 (2009); see also REST 2d
CONFL § 187. The first question under Section 187(1) is whether
the "particular issue" in dispute—here, the conscionability of
the delegation clause—is "one which the parties could have
resolved by an explicit provision in their agreement directed to
that issue." See REST 2d CONFL § 187(1). If the answer is yes,
section 187(1) applies and the choice-of-law clause is
enforceable with respect to that particular issue. REST 2d
CONFL § 187 cmt c. If not, the Court proceeds to section
187(2). Id. cmt d. Here, neither Wainwright nor Melaleuca
suggest that contracting parties can agree to be bound by
unconscionable terms. Because the particular issue is not one
the parties could resolve by explicit agreement, Section 187(2)

applies.

Section 187(2) instructs courts to enforce a contract's choice-of-law clause unless one of two exceptions apply. REST 2d CONFL § 187 (emphasis added). The exceptions contained in section 187 prevent courts from enforcing a choice-of-law provisions when:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

REST 2d CONFL § 187(2).

The first exception does not apply. Melaleuca has a substantial relationship to Idaho. It was not only incorporated in Idaho but is also headquartered there. Martineau Decl. ¶ 3. The corporation undoubtedly has an interest in having its contracts governed by the law of the state where it principally exists and makes important business decisions.

The second exception, however, poses a more nuanced question. Although not cited by either party, the Court finds that its previous case, Stryker Sales Corp. v. Zimmer Biomet, Inc., 231 F. Supp. 3d 606, 619-20 (E.D. Cal. 2017), provides a helpful illustration of this analysis. See also REST 2d CONFL § 187 cmt g. Under section 187(2)(b) a court must, as a threshold matter, determine whether the chosen law is contrary to a fundamental policy of either the forum state or the state

6

whose law would otherwise apply under section 188 of the restatement. Stryker Sales Corp., 231 F. Supp. 3d at 619-20; REST 2d CONFL § 187 cmt g; see also REST 2d CONFL § 188. If the court determines that enforcing a choice-of-law clause would be contrary to a fundamental policy of the forum state, it must still determine (1) whether "the interests of the forum state are 'materially greater' than those of the chosen state" and (2) whether the forum state's interests "would be more seriously impaired by enforcement of the parties' [] choice-of-law provision than would the interests of the chosen state by application of the law of the forum state." Id. If applying the choice-of-law clause would not be contrary to a fundamental policy of the forum state, however, the analysis ends there—the Court will enforce the contractually-chosen state's law. Stryker Sales Corp., 231 F. Supp. 3d at 620 (quoting Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 466 (1992)).

As comment g to section 187 explains, there is no bright-line definition of a "fundamental policy." See id. cmt. g. But "to be 'fundamental,' a policy must in any event be a substantial one." Id. The forum court cannot "refrain from applying the chosen law merely because [it] would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." Id. Wainwright argues the choice-of-law provision violates California's fundamental policy because it "disables California substantive law, undermining [plaintiff's] claims on the merits." Opp'n at 9 (quoting Pinela v. Nieman Marcus, 238 Cal. App. 4th 227, 251 (2015)) (modifications in original)). In so doing, Wainwright

urges the Court to find the choice-of-law clause is unenforceable with respect to the delegation clause because it is unenforceable with respect to her broader claims. But the section 187 analysis does not paint with such a broad brush. Instead, it instructs courts to identify "particular issues" and assess whether the choice-of-law clause is enforceable with respect to each discrete issue. See REST 2d CONFL 187(2)(b). So, the question here is not whether resolving all of Wainwright's claims under Idaho law would violate the forum's fundamental policy; rather, it is whether conducting an unconscionability analysis of the contract's delegation clause under Idaho law would violate the forum's fundamental policy. Wainwright failed to identify a distinction between California's and Idaho's unconscionability laws that is so substantial it amounts to a fundamental policy difference. Given her inability to satisfy this threshold requirement, the choice-of-law inquiry ends here. See Stryker Sales Corp., 231 F. Supp. 3d at 620 (quoting Nedlloyd Lines B.V. v. Superior Court, 3 Cal.4th 459, 466 (1992)). Idaho law applies.

    2. Clarity of Delegation

 Having decided what law applies to each of Wainwright's defenses, the Court proceeds to the question of whether the delegation clause in the parties' contract "clearly and unmistakably" delegates the question of arbitrability to an arbitrator. As stated above, contracting parties "may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by clear and unmistakable evidence." Henry Schein, 139 S. Ct. at 530 (internal quotations

8

omitted). An enforceable delegation clause will direct an issue of arbitrability to the arbitrator even if the argument in favor of arbitration is "wholly groundless." Id.

Wainwright argues the delegation clause is unenforceable against her because the IMEA did not make clear that the clause would survive the termination of her agreement. Opp'n 2-3. She contends that because the IMEA expressly stated that some provisions would survive termination of the agreement—the delegation clause not among them—it necessarily follows the provisions not referenced would become inoperable once she stopped working with Melaleuca. Id. At the very least, she argues, the contract's failure to reference the delegation clause within the survival provision gives rise to uncertainty. Id. But as Melaleuca responds, Wainwright's claims of ambiguity are belied by the very text of the delegation clause. Reply at 1. It states:

> Except as outlined in Policy 45(b) below, all claims or disputes of any nature between one or more current or former Marketing Executives and Melaleuca . . . if not resolved by mutual agreement, shall be resolved in accordance with the follow procedures . . . . All issues are for the arbitrator to decide, including issues relating to the scope and enforceability of the arbitration provision.

Exh. E to Martineau Decl. ¶ 45(a), (a)(i) ("Statement of Policies") (emphasis added), ECF No. 9-9.

Courts interpret contracts by looking first to their plain language. Boise Mode, LLC v. Donahoe Pace & Partners Ltd., 154 Idaho 99, 108 (2012). A plain reading of Policy § 45 indicates that the parties agreed to delegate issues of arbitrability to an arbitrator even after Wainwright terminated her work with

9

Melaleuca. This delegation is clear and unmistakable. Unlike the plaintiff in Peleg v. Nieman Marcus Group, Inc., 204 Cal. App. 4th 1425, 1442-43 (2012), Wainwright fails to identify any part of the contract that truly undermines the clarity of this provision. The Court therefore finds the parties' contract clearly and unmistakably delegated questions related to the scope and enforceability of the arbitration agreement to an arbitrator.

### 3. Conscionability of Delegation

The Court also finds the delegation clause is conscionable under Idaho law. While true that "equity may intervene" if a contract's terms are unconscionable, "[c]ourts do not possess the roving power to rewrite contracts in order to make them more equitable,". Lovey v. Regence BlueShield of Idaho, 139 Idaho 37, 41 (2003). Unconscionability will only serve as a basis for invalidating all or part of a contract when both procedural and substantive unconscionability are present. Id. At 42.

As Lovey explains, "[p]rocedural unconscionability relates to the bargaining process leading to the agreement while substantive unconscionability focuses upon the terms of the agreement itself." Id. A contract or one of its terms may be procedurally unconscionable when it "was not the result of free bargaining between the parties." Id. Indicators of procedural unconscionability include a party's lack of voluntariness or her lack of knowledge. Id. Idaho courts consider "factors such as the use of high pressure tactics, coercion, oppression[, ] . . . imbalance on the parties' bargaining power . . . power, or other pressures" to determine whether a party entered into an

agreement involuntarily. Id. To gauge whether a contracting party lacked knowledge when entering that agreement, Idaho courts consider "the use of inconspicuous print, ambiguous wording[, or] complex legalistic language." Id. They also ask whether both parties had the "opportunity to study the contract and inquire about its terms" and whether there was a "disparity in the sophistication, knowledge, or experience of the parties." Id.

Wainwright provides two bases for her procedural unconscionability argument but Lovey is fatal to both. 139 Idaho at 43-45. She first contends that adhesion contracts offered on a take-it-or-leave-it basis are per se procedurally unconscionable. Opp'n at 4-5. California law takes this view of adhesion contracts, Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (2002), but Idaho law does not. See Lovey, 139 Idaho at 43 ("[A]n adhesion contract cannot be held procedurally unconscionable solely because there was no bargaining over the terms."). For the adhesive nature of a contract to serve as the basis for a finding of procedural unconscionability, it must be accompanied by evidence that "market factors, timing, or other pressures" prevented one of the parties "from being able to contract with another party on more favorable terms or to refrain from contracting at all." Id. Wainwright does not adduce any such evidence. Indeed, she concedes she could have refrained from contracting with Melaleuca. Opp'n at 5.

Second, Wainwright argues the delegation clause was procedurally unconscionable because it "was buried within 24 pages of single-spaced, 9-point font in a document that [she]

had no opportunity to separately sign." Opp'n at 5-6. In Lovey, the Idaho Supreme Court addressed and rejected an almost identical argument. 139 Idaho at 44-45. In doing so, it found that the arbitration clause—found on page seventeen of a twenty-five-page health insurance contract—was not procedurally unconscionable. Id. Each term in the Lovey contract was printed in the same font and each provision "was separately numbered, titled, and set off by spacing from the preceding and following provisions." Id. At 44. Given the clarity afforded by the contract's organization and consistency, the court found accusations of "unfair surprise" rang hollow. Id. Here, Melaleuca's Statement of Policies—the document containing the delegation clause—is thirteen pages. See generally Statement of Policies. The document's spacing and overall organization is conducive to both reading and understanding its contents. The document separates each page into three columns. Id. Each policy is numbered and given a descriptive heading. Id. Specifically, the Statement of Policies labels Policy 45, "Dispute Resolution and Arbitration." Statement of Policies at 9. The headings' font is light blue and slightly larger than the body text. Nothing in the document specifically emphasizes Policy 45; however, nothing in the document attempts to obscure it either. See id. Bound by the Idaho Supreme Court's analysis in Lovey, the Court does not find that the form this delegation clause takes gives rise to a finding of procedural unconscionability.

Nor is the delegation clause substantively unconscionable. Substantive unconscionability does not focus on how the parties

came to contract with each other. In contrast, it "focuses solely upon the terms of the contract" and whether they result in "a bargain that no person in his or her senses . . . would make on one hand and that no honest and fair person would accept on the other." Id. Put simply, a court must decide whether a contract or provision is so "one-sided or oppressive" that it cannot stand. Id. To reach this decision, Idaho courts weigh three factors: the purpose and effect of the terms at issue, the needs of both parties and the commercial setting in which the agreement was executed, and the reasonableness of the terms at the time of contracting. Id. At 43.

Wainwright's substantive unconscionability argument, however, attempts to rest solely upon Pinela, 238 Cal. App. 4th at 248-49. Opp'n at 6. There, the California Supreme Court held a delegation clause was substantively unconscionable where it, when viewed in conjunction with the choice-of-law clause, served as a complete bar to raising an unconscionability defense under California law. 23 Cal. App. 4th at 245-49. Even if California law applied, Pinela would not compel the result Wainwright seeks. As Melaleuca argues, the choice-of-law provision in Pinela materially differs from the one at issue here. See Reply at 2. The clause in Pinela stated:

> This Agreement shall be construed by, and enforced in accordance with the laws of the State of Texas (except where specifically stated otherwise herein), except that for claims or defenses arising under federal law, the arbitrator shall follow the substantive law as set forth by the United States Supreme Court and the United States Court of Appeals for the Fifth Circuit. <u>The arbitrator does not have the authority to enlarge, add to, subtract from, disregard, or . . . otherwise alter the parties' rights under such laws, except to the extent set forth herein.</u>

13

Pinela, 238 Cal. App. 4th at 243-44 (emphasis and modifications in original). Essentially, the Pinela contract not only set forth a choice of law, but also prohibited the arbitrator from finding that choice unenforceable–even "where enforcement would result in substantial injustice, as defined by California law." Id. at 248.

The arbitrator here is not similarly hamstrung. As Melaleuca argues, "nothing in the parties' agreement restricts the arbitrator from considering the enforceability of [this] choice-of-law provision and, in the [] event the provision were found unenforceable, applying California unconscionability law." Reply at 2. Indeed, because Idaho adopts Section 187 of the Second Restatement of Conflict of Laws, a choice-of-law dispute would require the arbitrator to consider California public policy before deciding what law applies. See supra at 4-8; see also REST 2nd CONFL § 187 cmt g. The delegation clause is not substantively unconscionable.

Accordingly, the Court finds the delegation clause contained in the Statement of Policies is enforceable. This clause delegates all "issues relating to the scope and enforceability of the arbitration provision" to the arbitrator. Statement of Policies § 45. This includes Wainwright's challenges to the forum selection clause and the arbitration agreement as a whole. See Opp'n at 7-17. The Court, therefore, GRANTS Melaleuca's motion to compel Wainwright's claims to adjudication. With nothing left to adjudicate, the Court also GRANTS Melaleuca's motion to dismiss. See Ortiz v. Hobby Lobby Stores, Inc., 52 F. Supp. 3d 1070, 1089 (E.D. Cal. 2014). The

Court orders this dismissal without prejudice to Wainwright re-filing in the proper forum should the arbitrator find her claims are not arbitrable.

### 4. Page Limits

The Court's Order re Filing Requirements ("Order"), ECF No. 3-2, limits memoranda in support of and opposition to motions to compel to fifteen pages. See Order at 1. A violation of the Order requires the offending counsel (not the client) to pay $50.00 per page over the page limit to the Clerk of Court. Id. The Court does not consider arguments made past the page limit. Id. Wainwright's opposition brief exceeded the page limit by two pages. Wainwright's counsel must therefore send a check payable to the Clerk for the Eastern District of California for $100.00 no later than seven days from the date of this Order.

## III. ORDER

For the reasons set forth above, the Court GRANTS Melaleuca's motion to compel arbitration and dismisses this action without prejudice to re-filing in the proper forum should the arbitrator find Wainwright's claims are not arbitrable.

IT IS SO ORDERED.

Dated: January 24, 2020

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE